UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RONALD S. WINDERS, | ) |
| | ) |
|     *Plaintiff* | ) |
| | ) |
| v. | )    *No. 1:11-cv-325-JAW* |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
|     *Defendant* | ) |

### *REPORT AND RECOMMENDED DECISION*[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeals raises questions about whether substantial evidence supports the administrative law judge's conclusion that some of the plaintiff's claimed impairments were not severe, whether the residual functional capacity ("RFC") that he assigned to the plaintiff is supported by substantial evidence, and whether the hypothetical question that he posed to the vocational expert was supported by substantial evidence. I recommend that the court affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on June 20, 2012, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

status requirements of the Social Security Act (for purposes of SSD) only through December 31, 2002,[2] Finding 1, Record at 13; that he suffered from degenerative disc disease of the lumbar spine, an impairment that was severe but which did not meet or medically equal the criteria of an impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 3-4, *id*. at 13-14; that he retained the RFC for light work, could sit, walk, and/or stand for six hours in an eight-hour workday, could understand and remember simple instructions, could execute simple tasks on a consistent schedule to complete a normal workday, could perform on unskilled, simple, light work; could interact with small groups of co-workers and tolerate normal supervision; could work in public areas but not interact with the general public, and could adapt to occasional routine changes in the workplace, Finding 5, *id*. at 14; that he was unable to perform any past relevant work, Finding 6, *id*. at 17; that, given his age (36 on the date of alleged onset of disability, April 1, 1996, a younger individual), high school education, work experience, and RFC, use of the Medical-Vocational Guidelines of Appendix 2 to 20 C.F.R. Part 404, Subpart P (the "Grid") as a framework for decision-making led to the conclusion that there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id*. at 17-18; and that, therefore, the plaintiff had not been under a disability, as that term is defined in the Social Security Act, at any time through the date of the decision, April 26, 2011, Finding 11, *id*. at 18.  The plaintiff did not seek review by the Appeals Council, but chose instead

---

[2] When asked at oral argument whether he was pressing the SSD claim on appeal, in light of the fact that it is not mentioned in the plaintiff's itemized statement, counsel for the plaintiff replied that he was pressing the claim, which was based on the facts that Dr. Butler's evaluation predated the date last insured and that the plaintiff's degenerative disc disease was longstanding.  Dr. Butler's evaluation is based on an examination that took place on December 10, 2007, Record at 532, long after the date last insured in 2002, and the lack of any citation to the record makes it impossible to verify the implied assertion that the plaintiff's degenerative disc disease was disabling before the date last insured.  If the SSD claim has not been waived by the failure to include it in the itemized statement, *see, e.g., Poisson v. Astrue*, No. 2:11-cv-245-NT, 2012 WL 1067661, at *5 (D. Me. Mar. 28, 2012), the plaintiff is not entitled to remand on the showing made at oral argument.

to bring an appeal in this court, *id*. at 1-3; as noted, the commissioner has admitted that the plaintiff has exhausted his administrative remedies. Answer of Defendant (ECF No. 7) ¶ 3.

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen*, 482 U.S. at 146 n.5; *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's statement of errors also implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs*., 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

### A. Step 2 Issues

The plaintiff contends that the administrative law judge should have found that he suffered from the additional severe impairments of chronic obstructive pulmonary disease ("COPD"), anxiety, a cervical spine "condition," and an upper extremity "condition." Statement of Specific Errors ("Itemized Statement") (ECF No. 10) at 1.

#### 1. COPD

With respect to the COPD, the plaintiff concedes that the sedentary work base would not be affected by restrictions on exposure to extreme heat, wetness, or humidity, but points to the statement of Dr. John Tkach, a treating physician, that he should also "avoid even moderate exposure" to "fumes, odors, dusts, gases, poor ventilation, etc." *Id*. at 3; Record at 907. This limitation, he asserts without citation to authority, "may significantly erode the unskilled, sedentary occupation base[,]" requiring "i[n]put from a vocational resource." Itemized Statement at 4. The administrative law judge, as noted, found that the plaintiff could perform work at the light exertional level, Record at 14, but this distinction makes no difference to the outcome of the plaintiff's argument.

The job identified by the vocational expert in response to the administrative law judge's hypothetical question, which did not include the restriction at issue here, was that of Checker I. *Id*. at 135. The Dictionary of Occupational Titles says that atmospheric conditions, which include fumes, odors, dusts, gases, and poor ventilation, *see, e.g., Dodds v. Astrue*, No. CIV-09-445-SPS, 2011 WL 1135104, at *2 (E.D. Okla. Mar. 25, 2011), are "Not Present" for the job of

checker. *Dictionary of Occupational Titles* ("DOT") (4th ed. 1991), § 222.687-010. Accordingly, any error in omitting this restriction was harmless in this case.[3]

The plaintiff also bases his COPD Step 2 argument on Dr. Tkach's statement that "[p]ain, easy fatigue generally limit his concentration." Itemized Statement at 4, Record at 908. First, it is not clear whether Dr. Tkach means that the plaintiff's COPD, rather than some other impairment, causes "easy fatigue." Certainly the pain that causes this fatigue is not presented as a symptom of the plaintiff's COPD. Second, the degree of impairment of the plaintiff's concentration caused by "easy fatigue" is not specified, making the statement of little use in the Social Security calculus. The plaintiff has not established that recognition of COPD as a severe impairment would necessarily affect the outcome of his claim.

## 2. Cervical Spine and Upper Extremities

The plaintiff next contends that the administrative law judge erred by failing to adopt Dr. Tkach's diagnoses of degenerative joint disease of the shoulder and cervical spine, which he asserts resulted in "significant" restrictions on reaching and handling in both upper extremities. Itemized Statement at 4-5. He acknowledges that Dr. Webber, the medical expert who testified at the hearing, rejected much of this diagnosis. *Id*. at 5. The administrative law judge relied on Dr. Webber's testimony in rejecting Dr. Tkach's conclusions. Record at 15, 16-17.

The plaintiff characterizes Dr. Webber's testimony as "question[ing] the limitations imposed by Dr. Tkach due to the lack of recent diagnostic studies." Itemized Statement at 5. He then points out that Exhibits 34F through 36F, which were admitted into evidence after the hearing and thus not available to Dr. Webber, are "studies of the cervical spine and shoulder[,]"

---

[3] At oral argument, the plaintiff's attorney, in response to a question noting the DOT definition, stated that the only proper question to a vocational expert would include restrictions from all of the impairments that he contended were severe, and that it is "not uncommon" for a vocational expert to say that he or she differs from the Dictionary of Occupational Titles. This kind of unspecific speculation is not enough to merit remand.

the significance of which the administrative law judge himself interpreted.  *Id*. at 5-6.  Since the administrative law judge is not permitted to interpret raw medical data, the plaintiff concludes that he is, therefore, entitled to remand.  *Id*. at 6.

Setting aside the fact that the logical impact of this argument would be that, whenever a claimant or his or her representative submits unsolicited medical evidence after hearing, he or she thereby is ensured of a successful appeal and remand, there is no evidence that the administrative law judge in this case considered any of the exhibits submitted by the plaintiff's representative after the hearing, and certainly no evidence that the administrative law judge gave him permission to do so.  *See id*. at 369; 20 C.F.R. § 405.331.  The administrative law judge's opinion does not mention these exhibits, making it unlikely that he "interpreted" them.

Any error at Step 2 with regard to these alleged impairments can only be considered harmless, on the showing made.

### 3.  Mental Impairments

The plaintiff faults the administrative law judge for "declin[ing] to identify a medically determinable mental impairments[,]" Itemized Statement at 6-9, even though he included mental limitations in the plaintiff's RFC "as a matter of caution."  Record at 17.  He admits that his representative, when invited by the administrative law judge at hearing to pose a hypothetical question to the vocational expert that included "all the factors the claimant is alleging," *id*. at 82, did not include any mental limitations.  Itemized Statement at 7.  The administrative law judge relied on this omission as the basis for assigning "little weight" to the mental limitations identified by a state-agency reviewing psychologist and a state-agency consulting psychologist.  Record at 17.

Under the circumstances, where the vocational expert agreed with the plaintiff's representative that the physical limitations he included in his hypothetical question were sufficient, without more, to render the plaintiff incapable of any work, *id*. at 82-83, I agree with the plaintiff that the failure of his representative to insist on forging ahead to include mental limitations in the hypothetical question as well cannot provide the basis for ignoring those limitations in evaluating his RFC. However, the administrative law judge did not ignore them. He included in the RFC several mental limitations: simple instructions, simple tasks, a consistent schedule, small groups of co-workers, no interaction with the general public, and only occasional routine changes in the workplace. *Id*. at 13.

The plaintiff makes the conclusory assertion that the "failure to include mental health diagnoses as severe impairments would likely impact the outcome of Plaintiff's claims because the RFC as formulated by the ALJ does not include limitations relative to concentration, persistence or pace as identified by an examining source[,]" presumably Dr. Butler, the state-agency consultant who met once with the plaintiff. Itemized Statement at 9. He may mean to refer to Dr. Butler's limitations that he describes as "the need for multiple reinforcements for new learning; difficulties with attention, concentration, and sustaining focus; and difficulties with speeded or pressured performance." *Id.*

It appears, however, that these limitations are in fact addressed by the RFC's limitations. The plaintiff does not suggest any specific limitation that should have been included as a result of Dr. Butler's findings that was not included. How, for example, should the need for "multiple reinforcements for new learning" and "difficulties with speeded or pressured performance" be addressed other than by restrictions to simple instructions, simple tasks, and only occasional, routine changes in the workplace? Indeed, the limitations adopted in the RFC are close to those

recommended by Dr. Lester, the state-agency reviewing psychologist, who had the benefit of Dr. Butler's report.  Record at 564.[4]

The plaintiff has not demonstrated that he was prejudiced by the administrative law judge's failure to include anxiety or any other mental impairment in his RFC.

### B.  Substantial Evidence

The plaintiff contends that he was harmed by the administrative law judge's disregard of the opinions of Dr. Butler and Dr. Lester.  Itemized Statement at 9-13.  At this point in his statement of errors, he specifies that the administrative law judge did not allow for the following limitations identified by Dr. Butler: the need for multiple reinforcements for new learning, difficulty sustaining task focus, and difficulty with performing jobs where speeded or pressured performance is required.  Itemized Statement at 11.

It is doubtful that any job consisting of simple tasks with simple instructions would require "speeded or pressured performance."  Counsel for the plaintiff was unable to identify any such jobs at oral argument. Unquantified "difficulties with attention, concentration, and sustaining focus" are addressed by a restriction to simple tasks and simple instructions.  *See, e.g., Conley v. Astrue*, Civil No. 08-202-P-S, 2009 WL 214557, at *3 (D. Me. Jan. 28, 2009) (moderate difficulties in concentration, persistence, or pace).

That leaves the need for multiple reinforcements for new learning.  The plaintiff cited no authority specific to such a limitation, but it does appear to be inconsistent with the Level 2 Reasoning required in the checker job as described in the DOT: "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions." DOT § 222.687-

---

[4] At oral argument, the plaintiff's attorney argued that, because the administrative law judge did not specifically say that he was adopting some of Dr. Lester's limitations, the limitations that he did impose "could come from anywhere," rendering his conclusions "total guesswork."  However, the test on this appeal is whether the administrative law judge's challenged conclusions are supported by substantial evidence, not whether a different manner of presentation would make it easier for a claimant to address those conclusions on appeal.

010. My own research located no case law addressing such a limitation in the context of Social Security jurisprudence. The administrative law judge's only stated reason for rejecting Dr. Butler's findings was insufficient, as I have already noted. Dr. Lester acknowledged Dr. Butler's related finding that the plaintiff "[w]ould likely need multiple reinforcements of new learning[,]" Record at 560, but found that the plaintiff's ability to "understand and remember very short and simple instructions" was not significantly limited, *id*. at 562. I do not see any other category on the Psychiatric Review Technique forms filled out by Dr. Lester that could be construed to address the "new learning" limitation.

      While the question is a close one, I conclude that any omission of Dr. Butler's "new learning" limitation from the plaintiff's RFC is not a sufficient basis for remand.

      The plaintiff also attacks, Itemized Statement at 11-12, Dr. Lester's conclusion that he "can be reliable in sustained 2-hour blocks at simple tasks at a consistent pace over a normal work day/week[,]" Record at 564, because "he did not sustain a two-hour consultative evaluation[,]" citing Dr. Butler's observation that he had "an apparent significant loss of focus during the picture arrangement subtest." *Id*. at 536. This argument assumes that a "picture arrangement subtest" in the office of a psychologist is the equivalent of a simple, repetitive work task, an assumption that cannot be credited, even if the time involved in the subtest had been specified.

      The plaintiff next contends that Dr. Lester's finding that he carried out "a range of sustained daily activities and household chores[,]" *id*. at 564, has "no basis." Itemized Statement at 12. This is so, he asserts, because the activities listed by Dr. Lester "do not reflect a range of sustained daily activities and household chores that would support a finding that the Plaintiff would be reliable in working in sustained 2-hour blocks at a consistent pace over a normal work

9

week." *Id.* He cites no authority for this apparent statement of expert opinion that is contrary to Dr. Lester's expert opinion. On the showing made, there is no reversible error in any reliance that the administrative law judge might have placed on Dr. Lester's conclusion.

Finally, the plaintiff repeats his Step 2 argument with respect to his cervical spine and shoulder impairments. Itemized Statement at 13. For the reasons stated in my analysis of that argument, there was no reversible error in failing to include "any limitations associated with the Plaintiff's cervical spine and shoulder impairments[,]" *id.*, in the RFC.

The plaintiff is not entitled to remand on the basis of his second stated issue.

### C. Vocational Testimony

The plaintiff's last issue is a challenge to the hypothetical question posed to the vocational expert by the administrative law judge. Itemized Statement at 13-15. He contends that the RFC included in the administrative law judge's decision "does not correlate with the RFC posed to the VE at hearing" because the limitation to interacting only with small groups of co-workers was not included in the question to the vocational expert. *Id*. at 14. Although not specifically stated in his written submission, the plaintiff apparently feels that, since the vocational expert testified that "the unskilled light occupational work force would be eroded as a result of no work involving the public[,]" there must be additional vocational testimony before the administrative law judge could find that a "further" restriction to interacting only with small groups of co-workers would not cause an additional and significant erosion. *Id*.

The plaintiff cites no authority in support of this argument. The only authority I have been able to locate is to the contrary. *Summers v. Commissioner of Soc. Sec.*, No. CIV S-08-1309-CMK, 2009 WL 2051633, at *22-*23 (E.D. Cal. July 10, 2009); *see also* Social Security

Ruling 85-15, *reprinted in West's Social Security Reporting Service* Rulings 1983-1991, at 347-48.  This authority is persuasive.

The plaintiff also argues that the fact that the hypothetical question did not include any limitations "which may have resulted from a determination regarding Plaintiff's cervical and upper extremities, COPD, and mental impairments[,]" means that all of the vocational expert's testimony must be disregarded.  *Id*. at 14-15.  I have already determined that any omission of such limitations from the administrative law judge's findings constituted harmless error, at most.  This recasting of those arguments does not require a different outcome.

The plaintiff is not entitled to remand on this basis.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 10th day of July, 2012.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge